Good morning, your honors. May it please the court. John R. Grayley on behalf of petitioner and appellant Jose Rodriguez. The case is a very unusual case. Council had an expert sitting in the hallway prepared to testify that Mr. Rodriguez was incompetent to stand trial. Was that at the, there are three hearings that are detailed in the briefs. Was that at the third hearing, which was denominated a preliminary hearing, or was that at trial? We're not really sure when that was. It was shortly, it was around the period of September 1987, the time of the second and third hearings. Okay, so it wasn't at trial. It was either the second or the third. It was either the second or third hearing, yes. That's what we can glean from the record we have. And he was prepared, and he was sitting there thinking he was going to testify, and counsel decided not to call him. No counsel can waive such a fundamental right. Have you talked to trial counsel? Is trial counsel still living? Both trial counsel are still living, yes. Okay, did anybody try to talk to him? Do you have an affidavit in the record? There's no affidavit by counsel on competency issues. There is an affidavit on some objection and Brady issues. Why not on competency? Well, I wasn't counsel back then. That was years and years and years ago. And I don't know the answer specifically. They're still around now. They're still around now, that's right. Nobody's thought to talk to them, to ask them why they didn't call the witness? I did not, no. I did not contact them in this regard. They did say on the record what we're concerned about here is that this evidence can be used against us at trial, which was an error of State law. In my experience as a trial judge, it's usually the government who gets an affidavit from the lawyer who's accused of being ineffective because that lawyer no longer has a privilege and wants to defend her or his or her reputation. So Judge Biby just asked you the question, I was going to ask your opponent. And I was going to say, I've seen that in many capital habeas cases where the Attorney General's office goes to counsel and gets an affidavit. But I've seen it a lot, too, when the attorney wants to fall on his sword and say, yes, I was incompetent. So I've seen it both ways. It's just kind of curious that we don't have anything one way or the other. Well, you know, Your Honor, it's interesting that the Court would raise that argument because the courts have looked with displeasure upon falling on the sword. So I get an affidavit from counsel that says, that's right, I messed up on such a fundamental right. So he's subjecting himself to bar discipline by doing that. And then it doesn't get credited by the courts. Sometimes it does and sometimes it doesn't. That's correct. If you had gone to him and he said, let me explain to you why I didn't, you might have presented your argument differently, wouldn't you? I might have. You surely would not have concealed that from the court. No, of course not. If he had said something one way or the other, and this is why we wanted a hearing, what is he going to say? But you don't have to have a hearing to get a declaration from counsel. Well, sometimes you do. I have many capital cases where counsel refuses to talk about many things to me because they know they're on the hook and they're going to get referred to the State Bar. But nobody made the effort here. That's the unusual thing. That is the unusual thing. So far as we know, we'll ask your opponent. So far as we know, nobody made the effort here. But I want to step back for a couple of minutes on a couple of things that concern me about this case. And the first one is the district court's ruling that there's a presumption of competence that must be overcome by clear and convincing evidence. It's a 2254E1 argument. That is not the case. That is contrary to law. Petitioner has the burden in habeas corpus of preventing his case by a preponderance of the evidence. They have crafted this notion of a 2254E1 presumption that no other court has applied in these circumstances. Now, that presumption could apply if there was actual fact-finding on the issues of competency raised in the State habeas. And a finding that says, based on this record, we say that the guy was Mr. Rodriguez was competent. We don't have that here. And that's a fundamental error in the district court's analysis. That's the lens through which it views the entire case. And that's what's wrong with the district court opinion there. And the reason why competency is so important is expressed in the core case of Strickland itself. They generate a reasonableness standard and said, we're going to presume that counsel is reasonable. And they say why. It's because counsel is talking to his client or her client, and because that client is interacting with counsel and offering counsel assistance in whatever endeavors counsel is engaged in, and that those are influencing counsel's decision-making process. We don't have that here. Look at the record of the impairments that Mr. Rodriguez has. Dr. Riley does testing. Twenty-five out of 40 show significant impairment. And she says what that means. She outlines. You know, usually you find 5 or 10. Twenty-five is a remarkable finding. The numbers, the numbers, I mean, yeah, the numbers, they seem like big numbers. I have no idea what 25 impairments means. But we have a district judge or a trial judge who's talking to the guy. We have trial counsel who has made a number of objections. But he's only made the objections when his client isn't willing to waive time. And other than that, he never raises any question about his client's competency. This is correct. This is correct. And that's a fundamental error of counsel. Counsel believed that he has a strategic How do we know it's a fundamental error of counsel? Well, counsel said so. Counsel said on the record, here's my concern. Right. If I raise these competency issues. But the only time he does it is when his client isn't willing to do what counsel wants him to do, which is to waive time. Which is exactly what was wrong with counsel. And once we get beyond the question of waiver of time, counsel never raises it again. Counsel never raises it again. But he says he's going to continue to investigate. And he did continue to investigate. And he got an expert to say the guy's incompetent, and then he did nothing. He did continue to investigate. He certainly did. And the guy has and the expert says I'm sitting there in the hallway waiting to testify that Mr. Rodriguez is incompetent. Now, the Court referred to the State court record, and I think that that's the core  question. Could a reasonable jurist, looking at this habeas record, and the habeas record is remarkable on competency. Looking at this habeas record, say, okay, I'm looking at this trial record, and that really tells me that this habeas record is not to be credited. Could a reasonable, fair-minded jurist say that? And the answer to that is squarely no. And one of the reasons is, well, there's several reasons. One of the reasons in that record is that the Court is engaging in an inquiry of Mr. Rodriguez that goes as follows. Long, lengthy recitations of what's going on, and then followed by the question, do you understand that? And Mr. Rodriguez says yes. There is no substantive inquiry of Mr. Rodriguez. And whenever they do veer off into open-ended questions, Mr. Rodriguez invariably is tangential and gets it wrong. And we have the luxury in this case of having Dr. McKenzie actually in the courtroom to observe this at the second trial. And he offers in his declaration, this is what was wrong. This is what was wrong with this proceeding. And now we know why. The nature of these impairments, these are not impairments like schizophrenia or bipolar disorder or delusional disorder that are so obvious to us all. And I was a trial attorney for 15 or 20 years. I did many competency hearings, and I know what they're talking about. These are impairments that are subtle and profound. And they're impairments that, and I talked about this in the reply brief, they're impairments that the courts recognize are just as significant, just as important, just as impacting on competency. And we have, in the record, twice, in both hearings where it's actually, there's three hearings, but there's only two of substance. In both substantive hearings, counsel Carr says after these, after the court is making these inquiries, counsel Carr says, you know, Your Honor, I was of the same mind as the court initially, but then I spent more time with Mr. I asked some more questions, and that's when I became concerned. Because he, yes, he can say, I understand everything, I understand, I understand. But when you ask him to say, what am I telling you, he can't do it. When I ask him to say, what are your reasons, what's going on here, he can't tell me that. And so the court finally gets around to saying, what are your reasons, why, tell me why. And Mr. Ryriguez says, basically, I'm tired of this. What that is, is a mentally disabled defendant saying that this process is weighing on me. But, counsel, that's, what compels that conclusion, that no rational person would have failed to waive time and say, I'm tired of this and I just want to, I want my, I want to exercise my speedy trial rights? He's got, he's got constitutional and statutory rights. Well, usually when somebody does that, and I've had many clients that do that, usually they do that because they've got a strong case, the government's case or the state's case is weak and will only get better with time. And they're weighing these potentialities. And we have weighing of potentialities in some of the cases that respondent says, like the Davis case. We have that by the client. We don't have that here. Usually that's the case. Here he says, I'm going to be staying here anyway. I'm sitting here anyway. I'm on a parole hold. I'm not going anywhere. It doesn't matter. That's what he says. He is just so impaired and so disturbed by the process and doesn't understand it. And you can see that in the record. Every time he has to explain something that's bothering him, it's a clear misunderstanding of the nature of the proceedings. And counsel has to go back and correct it with the court. No, what he's really talking about is this, and here's why this is, and here's what that is. Every time. It's a remarkable record on the nature of these impairments and how they affect the thinking process of somebody that is so impaired. And that's what Dr. McKenzie tells us. At the June 22nd hearing, Attorney Carr says, Your Honor, you have to do more, make more of an inquiry. And the court says, and the court in the second hearing in September says this as well, Look, I'm just eyeballing this Mr. Rodriguez. I'm asking him if he understands. He says yes, and you're not offering me enough to go any further. That's what the trial courts are saying to counsel. Now, I can understand, although I disagree with it, why under the Pate claim, the due process claim, the right to a hearing claim, a reasonable jurist looking at that record might deny relief on a Pate claim. Because he's saying, the courts are saying, you've got to bring me more. You've got to tell me more about these neurological impairments. You've got to tell me more about this oxygen deprivation and how it affects Mr. Rodriguez. Otherwise, all I got on this is a defendant saying to me he understands what's going on, and I can't go much further. Now, maybe, maybe a reasonable jurist looking at that can say that that's fine under 2254 D2. But not a reasonable jurist who's looking at the habeas record, the record that the trial judges wanted, the record that they told counsel they needed, and the record that counsel actually had in his breast pocket. I wanted to spend a brief amount of time on the juror claim, and for two reasons. One, it's clear that Juror Langston was dishonest about very fundamental aspects of the case. And two, that she, her questionnaire shows an extreme hostility towards drug users and drug dealers and the violence associated with that. But the legal errors that I think are important here. Counsel, is it clear that she would have been excused for cause? Well, once you take those answers in the questionnaire that she gives, and then she says, oh, yes, my brother was a victim of violence right on the same area, same neighborhood, almost the same circumstances. I don't see how a judge could deny a challenge for cause on that. I think any reasonable jurist would deny it, would grant that challenge for cause. But the procedural default issue that I know the respondent hasn't briefed, I don't know if the court wants to hear that, but that's a fundamental error of law by the district court, contrary to Ninth Circuit precedent on when you examine defaults and how you examine them. And then the Hagelin case on implied bias. The court's going to have to deal with that issue at some point in time. It's contrary to an en banc opinion in Dyer. It's contrary to several circuits, as the district court noted. It's contrary to Supreme Court precedent. It's ahistorical, as I've noted in my brief. If we confine it and limit it to the circumstances in Smith v. Phillips, the circumstances in Hagelin when a hearing is held, then maybe it has some validity. I'd like to reserve the rest of my time, if possible. All right. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Sarah Farhat on behalf of the respondent. To begin first with the declaration from counsel and the fact that we don't have anything from counsel with respect to the competency issue. Judge Friedman, the State, as far as I know, has not spoken to either trial, counsel. But at the same time, our position is it's not our burden to establish the defendant's or petitioner's claims for him. Even ineffective assistance of counsel. You don't think you have to defend against a claim of ineffective assistance of counsel by the easiest way possible is to get an affidavit from the lawyer so he can explain his strategic decisions. I appreciate that. But I think that the claim under the standard of review that we're working with here could have and was properly disposed of on the record as it stood. Petitioner needed to overcome the standard imposed by AEDPA. He needed to make that record. And so we don't have trial counsel's reasoning or anything with regard to the competency issue. Counsel, does the record reflect that defense counsel at any time requested a competency hearing? There is no formal request for a competency hearing. As Judge Bybee had noted, the record, the issues around competency always were raised in the context of Mr. Rodriguez not wanting to waive time, first for the preliminary hearing and then later for trial. And it was in those in-camera hearings where the concern about competency was raised. He did state that they were kind of at an impasse or at a fork, I suppose, in the road to institute and request formal proceedings under the state statute. But that request was never formally made. What about the paragraph 10 of Dr. McKenzie's declaration, who basically said, I did evaluate him. I did render an opinion. And when I expressed concerns to the judge in September, I told him he had a high risk for neurological impairment, difficulty understanding even simple requests. What I saw in the courtroom gave me grave concern. So, therefore, I evaluated him further and made detailed notes. I was prepared to present my findings as to the, quote, profound scope of Mr. Rodriguez's incompetency. I discussed my opinion with trial counsel. I thought I would be called to testify, and I was never called. So what do we do with that on either the competency claim or the ineffective assistance of counsel claim? Well, as my colleague noted, the subsequent evaluation done by Dr. McKenzie, it's not clear when exactly that occurred. It's not clear when he spoke to trial counsel. And I think more importantly, in that paragraph, he doesn't he says he's prepared to present his findings as to the profound scope of Mr. Rodriguez's incompetency, but he doesn't give any specifics about that, and I think that's problematic. Well, that would have been a good reason to have a hearing, wouldn't it, and a good reason for counsel to have acted effectively and demanded a hearing. Well, but if Dr. McKenzie brought that to trial counsel on the eve of the third hearing, the September 15th hearing, where counsel and defendant, or Mr. Rodriguez, all showed up in court and said, we're good, he's waiving time, he's spoken to doctors, he's signed releases, we're all good on that front. We don't need to. Well, how does that make him competent to help his counsel prepare for trial and to defend himself at trial? The doctor has found him profoundly incompetent. Well, I think that the doctors, again, we don't know the basis for the doctor's opinion, other than we would have known after an evidentiary hearing. Well, but the record of the pretrial proceedings before that are contrary to that opinion. No, they're not. Profoundly incompetent doesn't mean just with respect to not understanding the concept of waiver. Profoundly incompetent is an expert saying incompetent. Incompetent means unable to assist his counsel, unable to understand lots of things, not just waiver. Why not find out what he meant? But it's not just waiver that he understood. He asserts a variety of rights. He says he's not going to sign any releases. He doesn't understand. I don't see how that would demonstrate. Well, that all happened before this doctor did his further tests and talked about incompetency generally. He didn't talk about incompetency in terms of what had happened in the prior hearings. Can't you infer from this? He's saying, things were worse than I even thought when I saw him interact with the judge in court. Now that I've done all this testing, this man cannot help you prepare for trial. He doesn't know how to. But I think that that conclusion is flatly contradicted by what Mr. Rodriguez demonstrated in court. After this date? After this date, we don't have any issue with competency, so that's never raised again. So that's ineffective assistance of counsel not to raise it again. Not necessarily. We don't know what counsel's reasons for or were for. Well, shouldn't there have been a hearing on ineffective assistance of counsel as well as a hearing on competency then? In the district court? No, because the petitioner hasn't. Mr. Rodriguez failed. He didn't satisfy 2254D in order to get that hearing. But we can revisit that, couldn't we? This Court could. What about the fact that the district, that this paragraph also says that this doctor was told by the lawyers that they were concerned that the State might use Mr. Rodriguez's incompetency against him, which was a misstatement of the law, which was also embraced by the district court judge? I went back and I read the trial court record on that, and it's not clear to me what trial counsel was talking about, to be quite honest. There is some inconsistency in the record. Dr. McKenzie is stating this in his declaration. Trial counsel stated what appears to be something else in the record. But, again, it's not clear to me what exactly trial counsel was referring to when he was talking about evidence in the competency hearing being released. But the Supreme Court has described the competency inquiry as having a modest aim. It seeks to ensure that the defendant has the capacity to understand the proceedings and to assist counsel. And here our position is that the pretrial record and the presumption of competence that every defendant comes in to trial proceedings with is ample evidence that contradicts Mr. Rodriguez's claim of incompetence, such that fair-minded jurists could conclude that the California Supreme Court was reasonable in denying relief. There is some confusion, it seems, between when to apply D-2 and when to apply E-1. The presumption of competence that I spoke about in the brief is the state presumption of competence. It's afforded in Penal Code Section 13-68-69. And it's proof defendant has the burden of proving incompetence by a preponderance of the evidence. There are also points in the pretrial record where the state trial court is saying, you know, he seems, Mr. Rodriguez seems rational to me. He's answering my questions. He's intelligible. I understand what he is saying. His responses are relevant to the questions that I'm asking. And so, therefore, you know, he appears to understand. He's competent to answer my questions. He knew what happened, and he knows what he's facing. These are the contemporaneous observations of the trial court that are the factual findings for purposes of E-1. D-2 goes specifically to factual findings made in a court's decision. And we don't have any of those here. This is a D-1 case because we have a summary denial on state habeas. So I just wanted to clear that up. The questions that Mr. Rodriguez was answering, there were many questions where he answered yes or no, as counsel, my colleague, had described. But there are also many questions where he gave an explanation for his reasons. Well, Dr. McKenzie says what he was doing was parroting back what he had just heard from the district court or from the trial court judge. And I don't think that the record demonstrates that. I think what he's – there are instances where he's saying, you know, how much – basically how much longer am I going to have to be here, which is nothing that the trial court talked about in the prior question or the prior judgment. But it does seem sort of irrelevant to the question of – Not if you read it in the context. I think what the point of what Mr. Rodriguez is saying is, you know, I've been here too long. I obviously don't like being in custody. Right. But there was no way that Mr. Rodriguez was going to avoid that. The question at this point was whether he was getting the death penalty. Well, whether he would be guilty. I mean, yeah. Right. But the guilt wasn't going to be – was not likely to be a serious question here. Mr. Rodriguez wasn't going anywhere. Well, especially if he had a parole hold, he probably wasn't going anywhere. But at the same time, he's saying, you know, I don't want to sign anything I don't understand. That's not implied in the trial court's question of, like, have you – you know, what's up with these releases? Are you not – why aren't you wanting to sign these? I don't want to sign anything I don't understand. He said at the third hearing, where actually everybody started getting along, that, you know, the court asked – defense counsel came in and said he's now willing to waive. And the court directed the question to Mr. Rodriguez. Is that true? And he says, yes. They haven't had any time to look into it. So he's understanding. It's not just a parroting back. He's understanding what the judge is asking him. And where he can, he's, you know, providing his thoughts one way or another. Where he doesn't understand something, it also seems to be clear because there was a colloquy or a part of the colloquy in the second hearing where the judge asks him, you know, through the system before, you know, how this goes. And he says, no, not really. He doesn't understand. And so then the court spends some time describing, you know, to Mr. Rodriguez what's happening. And, you know, through that, I think Rodriguez ends up at the, you know, at the end, he ends up understanding what the trial court is trying to convey to him. But the bottom line with the competency claim is that defendants walk into proceedings presumed competent. They have to. If they're not, as my colleague suggests, if their illnesses or disabilities can be so subtle that nobody else in the courtroom is going to pick up on it, then that is going to lead to every, to a competency hearing in every criminal case. Because how are we to know? How are we to, this defendant is sitting here. He appears calm. He appears well put together. He's answering the court's questions. But we don't really know. So let's stay the trial court proceedings and have a competency hearing. I think that that's what that kind of rationale is going to dictate. And I don't think that that's. But that's not this case because there were three hearings. The issue was raised in two. And between the second and third hearing, we have more than speculation. We have a doctor's opinion that was never presented to the court. So I think your hypothetical, while, you know, arguably good policy, I don't think is what we're facing in this case. Well, this case is, I take your Honor's point that it's different. But I was responding to colleagues, my colleagues' argument about that illnesses can be subtle. And you can't trust basically what a court is seeing or what defense counsel is or is not saying. I mean, for me, and I don't know how we sort this out in the context of 2254 is, you know, what burden was there on the judge to act sua sponte versus what burden was on the defense counsel? And that kind of cuts across both the issue of requesting a hearing on competency and the ineffective assistance of counsel. Yeah. Well, I mean, the statute is pretty clear on when a judge, and there's case law, when a judge has a bona fide doubt, needs to raise, needs to institute the procedure and have a competency hearing. And even under the statute, if the trial counsel doesn't say anything but the judge still suspects, he still has a duty. That kind of a little bit gets into the procedural competency issue, which was an uncertified issue. I didn't brief that. If the court would like further briefing on that, I'd be happy to do that. I mean, you're right. In the real world, in less subtle situations, I've been in situations as a trial judge, and Judge Robinson probably has too, you call both counsel to the bench and you say, something weird going on here. Do you think we ought to send him for a 48-hour competency review or whatever? That's not this case. It's not. It's, I mean, but again, it's a case where I think that the defendant is very clear in those pretrial proceedings, and our position really is grounded on the one-on-one or the in-court observations of everybody. And the fact that the only time counsel raised competency was when the defendant wasn't waiving time, and that impeded their ability to what they believed was provide an effective defense in a capital case. Very briefly on the juror issue, bottom line is that Mr. Rodriguez failed to establish that the juror was actually biased or that she intentionally was dishonest or had motive to lie in his case. My colleague raised the information about her brother being murdered, I guess, in the same neighborhood. It was 11 years before the voir dire in the case, and there's, you know, absent anything in the record to show that that would have affected her such that she could not be impartial in Mr. Rodriguez's case over a decade later, I don't think would have established a valid basis for a challenge for cause. All right, counsel. You've exceeded your time. Thank you. Mr. Bottom. Thank you. Just on a couple of points, if I may. The court at the second proceeding, I'm not prepared today without utilizing the opportunity that Mr. Rodriguez has now given for the doctors to talk to him and for him to reach a conclusion as whether he'll give consent or in a position at least to advise you on the issues which you originally raised. That's a competency. That is, whether, in fact, Dr. Mr. is prepared as an expert to testify as incompetency. The judge is saying, I can't do that, reach that issue, until Mr. Rodriguez sees the doctors. That's what the judge is saying. He's going to go see the doctors. Go let him see the doctors. Then bring it back to me. He went and saw the doctors. He was incompetent. He didn't sign releases because he doesn't understand what they are, even after counsel explains it to him multiple times. The court's findings are, one, Mr. Rodriguez really needs tender, loving care. Two, you've got to speak to him in short sentences. And three, don't use a lot of syllables. Those are also the trial court's findings. Does that reflect impairment? I submit it does. It suggests ways in which we ought to communicate with each other and ordinary conversation, counsel. Well, I try the best I can. To say that no one picked up on what was going on with Mr. Rodriguez, I think, is a simplification of the record because Attorney Carr did, and he told the court. I can see that there's a problem here. Now I know neurological impairment. Now I know oxygen deprivation. Now I know that he's just not being stubborn, that it's a physical or mental condition. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Sanchez v. AmeriFlight.
judges: Rawlinson, Bybee, Friedman